THOMAS BUSH LAW OFFICE LLLC

THOMAS E. BUSH         4737-0
1001 Bishop Street, Suite 1560
Honolulu, Hawaii 96813
Telephone:  (808) 536-2874
Facsimile:   (808) 536-2875
E-mail:  tom@tblawhawaii.com

BANIE & ISHIMOTO LLP
JOHN A. LEE*
Cal. Bar No. 229911
3705 Haven Avenue, #137
Menlo Park, CA  94025
Telephone: (650) 241-2771
Facsimile: (650) 241-2770
*(Pending *Pro Hac Vice* Admission)

Attorneys for Plaintiff
**LANDMARK TECHNOLOGY LLC**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LANDMARK TECHNOLOGY LLC,<br><br>       Plaintiff,<br><br>  vs.<br><br>HAWAIIAN ISLES KONA COFFEE CO., LTD.,<br><br>       Defendant. | CIVIL NO.<br>(Patent)<br><br>COMPLAINT FOR PATENT INFRINGEMENT; EXHIBITS A-G ; DEMAND FOR JURY TRIAL; SUMMONS |

# COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff LANDMARK TECHNOLOGY LLC ("Landmark" or "Plaintiff"), by and through its undersigned attorneys, for its complaint against HAWAIIAN ISLES KONA COFFEE CO., LTD. ("Kona Coffee Co." or "Defendant"), allege as follows:

## THE PARTIES

1. Plaintiff Landmark Technology, LLC ("Landmark") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 329 Laurel, San Diego, CA 92101.

2. On information and belief, Hawaiian Isles Kona Coffee Co., Ltd. ("Kona Coffee Co.") is a Hawaiian corporation with a principal place of business located at 2839 Mokumoa Street, Honolulu, Hawaii 96819. Landmark is further informed and believes, and on that basis alleges, that Kona Coffee Co. is in the business of selling food and beverage products, including coffee, and derives a significant portion of its revenue from sales and distribution via electronic transactions conducted on and using at least, but not limited to, the Internet website located at http://www.hawaiianisles.com and/or the Kona Coffee Co. functionality found at https://www.hawaiianisles.com/view_cart.asp, and incorporated and/or related systems (collectively the "Kona Coffee Co. Website"). Landmark is informed and believes, and on that basis alleges, that, at all times relevant hereto,

Kona Coffee Co. has done and continues to do business in this judicial district, including, but not limited to, providing products/services to customers located in this judicial district by way of the Kona Coffee Co. Website and through its physical stores located in this district.

## JURISDICTION AND VENUE

3. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq*.

4. This Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Kona Coffee Co. because it maintains its principal place of business in the state of Hawaii. On information and belief, KONA COFFEE CO. has transacted and is continuing to transact business in this District that includes, but is not limited to, the use of products and systems that practice the subject matter claimed in the patents involved in this action.

6. Venue is proper in this district under 28 U.S.C. § 1400(b) because Kona Coffee Co. is registered with the Secretary of State in the State of Hawaii and thus resides in this district under the Supreme Court's opinion in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). Further, upon information and belief, Kona Coffee Co. has committed acts of infringement in this district and a regular and established place of business in this district.

## FACTS

7. On September 11, 2001, United States Patent No. 6,289,319 entitled "Automated Business and Financial Transaction Processing System" was duly and legally issued to Lawrence B. Lockwood as inventor. A true and correct copy of United States Patent No. 6,289,319 is attached hereto as Exhibit A and incorporated herein by this reference.

8. Specifically, the '319 Patent claims a novel automatic data processing system, including an interactive multimedia terminal capable of providing a video-based user interface while both dynamically sending and fetching remote information in order to fetch new inquiring sequences for the user.

9. By January 24, 1986—the date to which the '319 Patent claims priority—conventional "self-service terminals," such as that disclosed in U.S. Pat. No. 4,359,631 ("the '631 Patent"), had "evolved to a high degree of sophistication." Ex. A, 1:34-37. A true and correct copy of the '631 Patent is attached as Exhibit B. In spite of their sophistication, however, conventional terminals of the day were nonetheless incapable of "the more complex types of goods and services distribution which requires a great deal of interaction between individuals and institutions." Ex. A, 1:35-41. In particular, they were incapable of supporting an interactive video presentation while at the same time sending and fetching information to and from remote locations. Indeed, during prosecution of

the '319 Patent, a three-judge panel of the Board of Patent Appeals and Interferences at the PTO found no suggestion of these higher-level functions being performed simultaneously in even the most sophisticated prior art terminal: "While [the prior art terminal of] Lockwood ['631] may fetch additional inquiring sequences (as in presenting additional questions or options to a user) in response to a user input, we find no suggestion in [the prior art terminal of] Lockwood ['631] of fetching the additional inquiring sequences in response to both user entry of data and to information received from the central processor," as claimed in the '319 Patent.  Thus, as the Board pointed out, prior art terminals did not use a "means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor" as that term is used in the '319 Patent.  A true and correct copy of the Board's decision is attached as Exhibit C.  That term, among others, and in combination with other claim elements, not only distinguishes the '319 Patent from prior art systems, but constitutes one of its "inventive concepts," rendering the patent eligible under 35 U.S.C. § 101.  Yet another deficiency of the prior art terminals was that they did not have a "means for interactively controlling the operation of said video screen, data receiving, and transmitting means; and for selectively retrieving said data from said means for storing," as that term is used in the '319 Patent. This, element, too, in combination with others, contains one of the

'319 Patent's "inventive concepts." Attempting to perform these functions at the same time on the prior art terminals of the early-to-mid 1980's, such as that disclosed in the '631 Patent, would have resulted in the congestion of their systems, rendering them virtually inoperable. These technical limitations of the prior art terminals were recognized by persons of ordinary skill in the art, as evidenced by the declaration of Joey A. Maitra, an engineer with extensive experience in the relevant subject matter who held multiple positions in industry during the 1980's. A true and correct copy of the Maitra Declaration is attached as Exhibit D.

10. The structure employed by the prior art terminal of the '631 Patent had, by 1986, become conventional. That structure, and its technical limitations, are representative of terminals of the period. As shown in Figure 8 of the '631



Figure 8 of Lockwood '631 – The Prior Art Terminal and its Single, Shared Information Handling Connection

Fig. 8

Patent, the terminal "employs a bi-directional parallel bus oriented input/output structure." Ex. B, 4:57-59 & Fig. 8. This information handling connection—bus 40—was *shared* among the terminal's systems. Ex. B, 4:62-64 (noting this "structure . . . accommodate[s] the various terminal components."). This structure presented a significant technical problem: in order to carry provide a higher degree of interactivity appropriate to the "more complex" transactions the '319 Patent sought to carry out, the terminal's video playback and communication systems would have been required to operate at the same time. However, persons of ordinary skill in the art recognized that this would have exhausted the data transfer capacity of conventional terminals. Ex. D [Maitra Decl.] ¶¶ 12, 14, 20.

11. To solve these issues, the '319 Patent introduced a novel hardware improvement in the claimed terminal. As demonstrated in Figure 2 of the '319



Patent, a DMA unit was positioned independently along its own information handling connection within the terminal, unlike the systems of the prior art. Ex. A,

Fig. 2.  Whereas prior art terminals would have incorporated a DMA unit into a single information handling connection shared among their systems (such as that illustrated in Fig. 8 of the '631 Patent), the '319 Patent disclosed two independent information handling connections designed to prevent congestion resulting from concurrent operation of terminal systems.  Ex. D [Maitra Decl.] ¶ 20.  As the specification of the '319 Patent explains, the terminal's modem "handles a batch of information through a direct memory access [DMA] unit 16, to and from a RAM memory"—i.e., placing information directly into memory along an independent information handling connection, and not, as in the prior art, by first traversing a shared connection already bogged down by other systems.  Ex. A, 3:41-43; Ex. D [Maitra Decl.] ¶¶ 17-20.  This unconventional hardware architecture enabled a higher level of interactivity and personalization of user transactions than was possible on conventional terminals in 1986, such as that disclosed in the '631 Patent.  Persons of ordinary skill in the art would have recognized that the architecture of the terminal claimed in the '319 Patent overcame the technical limitations of conventional terminals, enabling the terminal to provide a richer interactive presentation to the user while simultaneously utilizing its communication systems to fetch necessary data from remote sources.  Ex. D [Maitra Decl.] ¶ 14.

12. In an amendment filed on September 19, 1995, during prosecution of the '319 Patent, the inventor stressed that his claims "define a new set of interrelated apparatuses" and thus that "the claims do not merely recite the use of 'conventional hardware,'" but were directed to a "claimed new machine," not a method of doing business. As such, during prosecution the inventor specifically disclaimed a claim construction that "merely" covered "the use of conventional hardware" as of the time of invention, and narrowed his claims to require novel, non-obvious, and inventive concepts. Attached as Exhibit E is a true and correct copy of the September 19, 1995 amendment.

13. Following a reexamination of Patent No. 6,289,319, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate, Number US 6,289,319 C1, on July 17, 2007, confirming the validity of all six (6) original claims and allowing twenty-two (22) additional claims. A true and correct copy of Ex Parte Reexamination Certificate, Number US 6,289,319 C1 is attached hereto as Exhibit F and incorporated herein by this reference.

14. Following a second reexamination of Patent No. 6,289,319, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate, Number US 6,289,319 C2, on January 31, 2013, confirming the validity of all twenty eight (28) original claims. A true and correct copy of Ex Parte Reexamination Certificate, Number US 6,289,319 C2 is attached hereto as

Exhibit F and incorporated herein by this reference (United States Patent No. 6,289,319, together with the additional claims allowed by Ex Parte Reexamination Certificate, Number US 6,289,319 C1, and reaffirmed by Ex Parte Reexamination Certificate, Number US 6,289,319 C2 shall hereinafter be referred to as the "'319 Patent.")

15. On September 1, 2008, Lockwood licensed all rights in the '319 Patent to Landmark. Landmark is the exclusive licensee of the entire right, title and interest in and to the '319 Patent, including all rights to enforce the '319 Patent and to recover for infringement. The '319 Patent is valid and in force.

16. On or about December 1, 2017, Landmark sent Kona Coffee Co. a letter informing Kona Coffee Co. of the '319 Patent and that Kona Coffee Co.'s actions, as more fully described below, constituted infringement of the '319 Patent.

17. As more fully laid out below, Kona Coffee Co. has been and is now infringing the '319 Patent, in this judicial district and elsewhere, by providing its products/services using electronic transaction systems, which, individually or in combination, incorporate and/or use subject matter claimed by the '319 Patent.

### FIRST CLAIM FOR RELIEF

**(Direct Infringement of the '319 Patent, in Violation of 35 U.S.C. § 271(a))**

18. Landmark refers to and incorporates herein by reference paragraphs 1-17.

19. Kona Coffee Co. has directly infringed, and continues to directly infringe, at least Claim 1 of the '319 Patent in this judicial district and elsewhere in the state of Hawaii and the United States, through the sales and distribution via electronic transactions conducted on and using at least, but not limited to, the Kona Coffee Co. Website.

20. The claims of the '319 Patent relate to "an automated data processing system for processing business and financial transactions between entities from remote sites" comprising a variety of features. Landmark has described these features generally below and attaches a claim chart for Claim 1 as Exhibit G.

21. The Kona Coffee Co. functionality referenced above is "an automated data processing system for processing business and financial transactions between entities from remote sites" practicing the claims of the '319 Patent.

22. By way of example only, and without limitation, the Kona Coffee Co. Website's functionality and supporting server infringes at least Claims 1 of the '319 Patent in that, the Kona Coffee Co. Website's functionality and supporting server provide a system that, when accessed by a terminal, practices all of the limitations of the claims and on which Kona Coffee Co. processes business information and places purchase orders, including:

    a.) The Kona Coffee Co. Website's functionality and supporting server, when accessed by a terminal, comprise an automatic data processing system

for processing business and financial transactions between entities from remote sites running the Kona Coffee Co. Website's functionality.

  b.) The Kona Coffee Co. Website system includes a central processor (the server and its supporting systems) programmed and connected to process a variety of inquiries and orders transmitted from Kona Coffee Co.'s functionality running at said remote sites.  Kona Coffee Co.'s system allows for a broad range of transactions, thus a range of orders are possible.  The system processes a "variety of inquiries and orders," such as inquiries regarding order history and order status, and the placement of orders for products.

  c.) The system is operated through a terminal (e.g., the Kona Coffee Co. computer(s) at each of said remote sites), which terminal includes a data processor and operates in response to operational sequencing lists of program instructions (the code constituting the transaction systems).  That terminal includes a DMA positioned independently on its own information handling connection, or its equivalent.

  d.) The system fetches additional inquiring sequences in response to a plurality of data entered through a keyboard and in response to information received from the central processor.  For example, the "My Account" section of the Kona Coffee Co. Website fetches additional inquiring sequences relating to

erroneous or empty data fields, depending on the user's entry and information received from the central processor.

e.) The server for the Kona Coffee Co. Website and Kona Coffee Co.'s computerized station(s), together with software, practice all of the remaining limitations of Claim 1 and 3 of the '319 Patent. Kona Coffee Co.'s Website, functionality and server, and incorporated and/or related systems, put the invention into service.

23. Kona Coffee Co.'s Website exerts control over the transactions placed via the claimed terminal. On information and belief, when the terminal's browser accesses Kona Coffee Co.'s Website, Kona Coffee Co.'s server causes the browser to place a "cookie" on the claimed terminal, which allows users to store items in the website's shopping cart.

24. Kona Coffee Co., on information and belief, is also engaged in internal use of the claimed system, by developing and testing versions of its Website on its own computers. For example, Kona Coffee Co. employs an "Information Technology Director," who "manages the entire Corporate Technical and Network Infrastructures for Hawaiian Isles Kona Coffee Company." *See* https://www.linkedin.com/in/keng-wei-chang-22a7b4a/. Kona Coffee Co. also employs an "Ecommerce Manager." *See* https://www.linkedin.com/in/david-dugay-5874294/. Kona Coffee Co., therefore, by the acts complained of herein, is

making, using, selling, or offering for sale in the United States, including in this District, products and/or services embodying the invention, and has in the past and is now continuing to infringe the '319 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

25. Kona Coffee Co. threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Landmark's irreparable injury. It would be difficult to ascertain the amount of compensation that would afford Landmark adequate relief for such future and continuing acts, and a multiplicity of judicial proceedings would be required. Landmark does not have an adequate remedy at law to compensate it for the injuries threatened.

26. By reason of the acts of Kona Coffee Co. alleged herein, Landmark has suffered damage in an amount to be proved at trial.

27. Landmark is informed and believes, and on that basis alleges, that the infringement by Kona Coffee Co. is willful, wanton, and deliberate, without license and with full knowledge of the '319 Patent, thereby making this an exceptional case entitling Landmark to attorneys' fees and enhanced damages.

## SECOND CLAIM FOR RELIEF

**(Inducing Infringement of the '319 Patent, in Violation of 35 U.S.C. § 271(b))**

28. Landmark refers to and incorporates herein by reference paragraphs 1-27.

29. Landmark is informed and believes, and on that basis alleges, that Kona Coffee Co. has actively and knowingly induced infringement of the '319 Patent, in violation of 35 U.S.C. § 271(b) by, among other things, inducing its customers to utilize their own device in combination the Kona Coffee Co. Website, and incorporated and/or related systems, to search for and order information and products from the Kona Coffee Co. Website in such a way as to infringe the '319 Patent.

30. For example, Kona Coffee Co. is inducing its customers to infringe by encouraging them to create new accounts and to sign in to their accounts using their login information to retrieve their customer information.

31. By reason of the acts of Kona Coffee Co. alleged herein, Landmark has suffered damage in an amount to be proved at trial.

32. Kona Coffee Co. threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Landmark's irreparable injury. Landmark does not have an adequate remedy at law.

33. Landmark is informed and believes, and on that basis alleges, that the infringement by Kona Coffee Co. is willful, wanton, and deliberate, without license and with full knowledge of the '319 Patent, thereby making this an exceptional case entitling Landmark to attorneys' fees and enhanced damages.

## PRAYER FOR RELIEF

WHEREFORE, Landmark prays for relief as follows:

A. Judgment that Kona Coffee Co. has directly infringed, and induced others to infringe, the '319 Patent either literally and/or under the doctrine of equivalents;

B. Judgment that Kona Coffee Co.'s infringement of the '319 Patent has been willful;

C. Judgment permanently enjoining Kona Coffee Co., its officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the '319 Patent, and from inducing others to infringe the '319 Patent;

D. Judgment awarding Landmark general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including enhanced and/or exemplary damages, as

appropriate, as well as all of Kona Coffee Co.'s profits or gains of any kind from its acts of patent infringement;

E.   Judgment awarding Landmark enhanced damages pursuant to 35 U.S.C. § 284 due to the willful and wanton nature of Kona Coffee Co.'s infringement;

F.   Judgment awarding Landmark all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

G.   Judgment awarding Landmark pre-judgment and post-judgment interest; and

H.   Judgment awarding Landmark such other and further relief as the Court may deem just and proper.

DATED: Honolulu, Hawaii, _____August 8, 2018_____.


_____/s/ Thomas E. Bush_____
THOMAS E. BUSH
Attorney for Plaintiff
**LANDMARK TECHNOLOGY LLC**